**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

MICHAEL D. BROWN,

        *Petitioner-Appellant*,

  v.

COMMISSIONER OF INTERNAL
REVENUE,

        *Respondent-Appellee*.

No. 23-70009

Tax Ct. No.
11519-20L

OPINION

Appeal from a Decision of the
United States Tax Court

Argued and Submitted December 7, 2023
Pasadena, California

Filed August 29, 2024

Before: Kim McLane Wardlaw, Kenneth K. Lee, and
Patrick J. Bumatay, Circuit Judges.

Opinion by Judge Wardlaw;
Concurrence by Judge Lee;
Dissent by Judge Bumatay

# SUMMARY[*]

## Tax

The panel affirmed the Tax Court's judgment sustaining a notice of federal tax lien.

Taxpayer Michael Brown requested a collection due process hearing pursuant to 26 U.S.C. § 6330 regarding a notice of tax lien on his property for unpaid taxes.  He also submitted an offer-in-compromise of the tax liability, which the Appeals Officer responsible for the due process hearing referred to the Collection Division's Offer-in-Compromise Unit for investigation. Within seven months, the Collection Division returned Brown's offer-in-compromise because it was not processable.  More than twenty-four months after the offer-in-compromise was submitted, the Office of Appeals sustained the notice of tax lien.

Brown petitioned the Tax Court, which issued a final order and decision sustaining the determination of the Office of Appeals.  The Tax Court rejected Brown's contention that his offer-in-compromise was deemed accepted by operation of law under 26 U.S.C. § 7122(f)—which governs the submission of an offer-in-compromise of outstanding tax liability to the IRS, imposes a 24-month deadline for the IRS to respond to a taxpayer's offer-in-compromise, and provides that an offer-in-compromise is deemed accepted if the IRS fails to reject it within 24 months—because the

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

Collection Division had returned Brown's offer-in-compromise within 24 months of submission.

The panel agreed with the Tax Court that Brown's offer-in-compromise was not deemed accepted by operation of law under § 7122(f). The panel rejected Brown's contention that, because he submitted his offer-in-compromise during a collection due process hearing, only the Office of Appeals' notice of determination can operate as the "rejection" that terminates § 7122(f)'s 24-month deadline. The Collection Division's return of Brown's offer-in-compromise within seven months constituted a "rejection" under § 7122(f), regardless of whether that offer was submitted as part of a collection due process hearing or not.

Concurring, Judge Lee wrote separately because he believes the 24-month limitation in § 7122(f) does not apply to the collection due process proceeding that Brown invoked under § 6330. There are two separate tracks for the IRS to process offers-in-compromise: one under § 7122(f) for standalone offers, which offers no judicial review but guarantees resolution within 24 months; and one under § 6330, which offers judicial review but is not bound by any timeline. Brown chose the latter track by raising his offer as part of a collection due process hearing. In doing so, he gave up the benefits of § 7122(f), including the 24-month deadline.

Dissenting, Judge Bumatay would reverse the Tax Court. Together, §§ 6330 and 7122(f) mean that when a taxpayer demands his rights under a collection due process hearing *only* the appeals officer—not the Collection Division—must have rejected an offer-in-compromise within 24 months or the offer is deemed accepted. Because the appeals officer

did not return Brown's offer-in-compromise within 24 months, it should have been deemed accepted.

## COUNSEL

Steven R. Mather (argued), Mather Law Corporation, Beverly Hills, California, for Petitioner-Appellant.

Matthew S. Johnshoy (argued) and Arthur T. Catterall, Attorneys, Tax Division; David A. Hubbert, Deputy Assistant Attorney General; United States Department of Justice, Washington, D.C.; William M. Paul, Internal Revenue Service, Washington, D.C.; for Respondent-Appellee.

## OPINION

WARDLAW, Circuit Judge:

A taxpayer served with a notice of tax lien on his property for unpaid taxes has the right to a due process hearing before an impartial officer under §§ 6320 and 6330 of the Tax Code. The purpose of such a hearing is to ensure that taxpayers are protected from wrongful IRS levies and sales of their property. During this proceeding, the taxpayer may raise any relevant issue relating to the unpaid tax or proposed levy, including collection alternatives such as an offer-in-compromise of the tax liability. 26 U.S.C. § 6330(c)(2). The Appeals Officer issues a determination of the propriety of the noticed lien, and the taxpayer may challenge an adverse determination by filing a petition for review by the Tax Court. 26 U.S.C § 6330(d). The statute

carefully outlines issues that the Appeals Officer must consider, but provides no statutory time limit within which the Office of Appeals must make its determination.

Meanwhile, a more specific statute dictates how the offer-in-compromise, whether submitted in the course of a collection due process hearing over a lien or as a stand-alone offer, is to be handled by the IRS. Section 7122 of the Tax Code governs the submission of an offer-in-compromise of outstanding tax liability to the IRS and provides procedures and guidelines for evaluating such offers. In contrast to § 6330, § 7122 does set forth a deadline within which the IRS must respond to an offer-in-compromise made by a taxpayer. Initially, when the statute was enacted in the 1950s, there was no such deadline. However, in 2006, Congress became concerned that offers-in-compromise were languishing within the IRS, and so as part of the Tax Increase Prevention and Reconciliation Act ("TIPRA"), it added a provision imposing a 24-month deadline for the IRS's consideration of such offers. Congress also imposed a stringent enforcement mechanism: If the IRS fails to reject an offer-in-compromise within 24 months, it will be deemed accepted. 26 U.S.C. § 7122(f). A returned offer—*i.e.*, one sent back to the taxpayer on the basis that it could not be processed—is also treated as a "rejection" for the purpose of this provision. *See* 26 C.F.R. § 301.7122-1(d)(2).

Petitioner Michael D. Brown received a notice of federal tax lien based on his outstanding tax liability for the 2009 and 2010 tax years exceeding $3 million. He requested a collection due process hearing under § 6330 and also submitted an offer-in-compromise, which the Appeals Officer responsible for the due process hearing referred to the Collection Divisions' Offer-in-Compromise Unit for investigation. Within seven months, in November 2018, the

Collection Division acted: It returned Brown's offer-in-compromise because it was not processable.

In August 2020 (more than twenty-four months after the offer-in-compromise was submitted), the Appeals Officer sustained the notice of lien, ruling against Brown, who petitioned for review to the Tax Court. The Tax Court held that because Brown's offer-in-compromise was returned in November 2018, within the § 7122(f) 24-month period, it was rejected. Brown now appeals the Tax Court's determination that the return of the offer stopped the running of the 24-month clock. He argues that his offer should have been "deemed accepted" because the Appeals Officer conducting the § 6330 due process hearing did not issue his final notice of determination within § 7122(f)'s 24-month period.

Because we conclude that Brown's argument improperly conflates the procedures set forth in the separate provisions of the Tax Code at issue here, and disregards the plain statutory language of each, we agree with the Tax Court, and we affirm its decision.[1]

## I.

This case marks Brown's third collection due process hearing, fourth petition to the Tax Court, and third appearance before this court to challenge the IRS's attempts to collect on his outstanding tax liability.[2] These prior cases

---

[1] This opinion affirms not only the outcome reached by the Tax Court but its reasoning, which the IRS advances in support of its arguments on appeal.

[2] *See Brown v. Commissioner*, 111 T.C.M. (CCH) 1372, 2016 WL 1746177 (April 28, 2016), *aff'd*, 697 Fed. App'x 1 (D.C. Cir. 2017); *Brown v. Commissioner* (*Brown I*), 118 T.C.M. (CCH) 260, 2019 WL

arose from collection actions related to Brown's 2001–2007 and 2014 tax years liability. The present case arises from the IRS's attempt to collect on Brown's 2009 and 2010 tax years liability. As of July 31, 2020, Brown owed more than $50 million in federal taxes for eleven tax periods.

This is also not the first time that Brown has submitted an offer-in-compromise to the IRS in an effort to settle his outstanding tax liability. In November 2016, Brown requested a collection due process hearing with the Office of Appeals in response to the IRS's filing of two notices of federal tax lien for his 2007 and 2014 tax years liability. *Brown v. Commissioner* (*Brown I*), 118 T.C.M. (CCH) 260, 2019 WL 4415190, \*1–2 (Sept. 16, 2019), *aff'd in part, vacated in part, and remanded*, *Brown v. Commissioner* (*Brown II*), 826 Fed. App'x 673 (9th Cir. 2020). Brown submitted an offer-in-compromise as a collection alternative, offering to settle his total outstanding tax liability for all years for $400,000. *Id.* at \*2. The Office of Appeals sent Brown's offer to the IRS's Centralized Offer-in-Compromise Unit which, after determining that the offer-in-compromise was processable, forwarded the offer to the Collection Division's Long Beach Group for further investigation. *Id.* at \*3. At the conclusion of its investigation, the Long Beach Group returned the offer-in-compromise to Brown, concluding that the offer was no longer processable because Brown was the subject of an ongoing "abusive tax avoidance transaction" investigation. *Id.* On August 11, 2017, the Office of Appeals issued a

4415190 (Sept. 16, 2019), *aff'd in part, vacated in part, and remanded*, *Brown v. Commissioner* (*Brown II*) (Hurwitz, Bress, and Bumatay, JJ.), 826 Fed. App'x 673 (9th Cir. 2020); *Brown v. Commissioner*, 122 T.C.M. CCH 199, 2021 WL 4316861 (Sept. 23, 2021), *aff'd Brown v. Commissioner*, 54 F.4th 1064 (9th Cir. 2023).

notice of determination sustaining the notices of federal tax lien, explaining that the Office of Appeals "concurs that the basis determined by Collection to return your Offer in Compromise was appropriate" because "there were other investigations pending at the Collection's level that might affect your delinquent tax account sought to be compromised." *Id.*

Brown petitioned the Tax Court for review. One of the arguments that Brown raised was that the IRS had not formally rejected his offer-in-compromise within 24 months after it was submitted, and it was therefore "deemed accepted" by operation of law under § 7122(f). *Id.* at *7. The Tax Court rejected this argument, explaining that § 7122(f)'s 24-month "deemed acceptance" period ends when an offer-in-compromise is rejected or returned. *Id.* Therefore, because Brown submitted his offer on November 16, 2016, and the Long Beach Group returned the offer on April 6, 2017, Brown's offer was not accepted by operation of law under § 7122(f). *Id.*

Brown appealed the Tax Court's decision to our court, and we affirmed on this issue, albeit in a nonprecedential disposition. *See Brown II*, 826 Fed. App'x. at 674.[3] We explained that an offer-in-compromise "will not be deemed to be accepted if the offer is, within the 24-month period, rejected by the IRS, or returned by the IRS to the taxpayer as nonprocessable or no longer processable." *Id.* (quoting

---

[3] *Brown II* also vacated *Brown I* in part and remanded to the Tax Court to determine whether it had jurisdiction to consider Brown's challenge to the IRS's refusal to refund the payment accompanying his offer-in-compromise. *Brown II*, 826 Fed. App'x at 674. On remand, the Tax Court determined that it lacked jurisdiction to refund the payment. *Brown*, 122 T.C.M. (CCH) 199, *aff'd*, 58 F.4th 1064 (9th Cir. 2023).

IRS Notice 2006-68, § 1.07, 2006-2 C.B. 105, 106) (alternations omitted). We therefore concluded that, because "[t]he IRS returned Brown's offer well before 24 months had elapsed since the submission of the offer-in-compromise," it was not accepted by operation of law under § 7122(f).

While the litigation in *Brown I* and *Brown II* proceeded, Brown requested the collection due process hearing at issue in this case. Endeavoring to collect Brown's outstanding tax liabilities for the years 2009 and 2010, the IRS filed a notice of federal tax lien covering these liabilities on November 9, 2017. In turn, Brown again requested a collection due process hearing, checking the box for "Offer in Compromise" as a collection alternative. Brown's due process hearing was assigned to Settlement Officer ("SO") James Feist in the IRS Independent Office of Appeals, who wrote to Brown's counsel, Steve Mather, proposing a telephone conference on April 12, 2018. SO Feist's letter explained that "[o]ur office is separate from, and independent of, the IRS office taking the action that you disagree with," and that "[w]e review and resolve disputes in a fair and impartial manner by weighing the facts according to the law and judicial decisions." The letter also informed attorney Mather that "[t]he Office of Appeals may ask the Collection function to review, verify and provide their opinion on any new information you submit."

On April 12, 2018, following a call with SO Feist discussing the collection due process hearing, Brown submitted an offer-in-compromise package to SO Feist. This package was not limited to the 2009 and 2010 tax years that were the subject of the due process hearing, but offered to settle all of Brown's outstanding tax liabilities for the years 2001–2007, 2009, 2010 and 2014 for $320,000. Brown proposed payments of $1,000 a month for 23 months

and a balloon payment of $297,000 at the end of the 24-month pay period. The Office of Appeals acknowledged receipt of Brown's offer-in-compromise on May 2, 2018. SO Feist forwarded the offer-in-compromise to the IRS's Centralized Offer-in-Compromise Unit, which acknowledged receipt on May 19, 2018, and which in turn referred the package to the Collection Division's Laguna Group, located near Brown's residence in Orange County, California, for investigation and consideration.

On November 5, 2018, the Laguna Group issued a letter to Brown returning the offer-in-compromise, stating:

> We have closed our file on your offer and are returning your Form 656, Offer in Compromise for the following reason(s): Other investigations are pending that may affect the liability sought to be compromised or the grounds upon which it was submitted.

The Laguna Group also notified Brown that "[a]s of the date of this letter, we are considering your offer closed." Attached to the letter was a copy of Brown's offer-in-compromise with the word "Returned" handwritten on it and the date, "9/18". The document, depicted below, was also crossed out by hand:

M 4/18
Returned

1001489374

**Form 656**
(March 2018)

Department of the Treasury — Internal Revenue Service

**Offer in Compromise**

RECEIVED IRS
(Not Received Date)
MAY - 7 2018
...HAVEN
1742

**To: Commissioner of Internal Revenue Service**

In the following agreement, the pronoun "we" may be assumed in place of "I" when there are joint liabilities and both parties are signing this agreement.

I submit this offer to compromise the tax liabilities plus any interest, penalties, additions to tax, and additional amounts required by law for the tax type and period(s) marked in Section 1 or Section 2 below.

Did you use the Pre-Qualifier tool located on our website at http://irs.treasury.gov/oic_pre_qualifier prior to filling out this form?
☐ Yes ☐ No

Note: The use of the Pre-Qualifier tool is not mandatory before sending in your offer. However, it is recommended.

Include the $186 application fee and initial payment (personal check, cashier's check, or money order) with your Form 656. You must also include the completed Form 433-A (OIC) and/or 433-B (OIC) and supporting documentation. You should fill out either Section 1 or Section 2, but not both, depending on the tax debt you are offering to compromise.

| Section 1 | Individual Information (Form 1040 filers) |
|---|---|

If you are a 1040 filer, an individual with personal liability for Excise tax, individual responsible for Trust Fund Recovery Penalty, self-employed individual, individual personally responsible for partnership liabilities, and/or an individual who operated as a disregarded single member Limited Liability Company (LLC) taxed as a sole proprietor prior to 2009 you should fill out Section 1.

| Your First Name, Middle Initial, Last Name | Social Security Number (SSN) |
|---|---|
| Michael D. Brown | ____ - 0296 |
| If a Joint Offer, Spouse's First Name, Middle Initial, Last Name | Social Security Number (SSN) |
| | ___ - ___ - ___ |

Your Home Physical Address (Street, City, State, ZIP Code, County of Residence)

50 Blue Heron
Irvine, CA 92603          Orange County

Your Home Mailing Address (if different from above or Post Office Box number)

| Is this a new address? | | ☐ Yes ☐ No |
|---|---|---|
| If yes, would you like us to update our records to this address? | | ☐ Yes ☐ No |

Your Employer Identification Number (if applicable)

☒ 1040 Income Tax-Year(s)   2001  2002  2003  2004  2005  2006  2007  2009  2010  2014

☐ Trust Fund Recovery Penalty as a responsible person of (enter business name)

for failure to pay withholding and Federal Insurance Contributions Act taxes (Social Security taxes), for period(s) ending

☐ 941 Employer's Quarterly Federal Tax Return - Quarterly period(s)

☐ 940 Employer's Annual Federal Unemployment (FUTA) Tax Return - Year(s)

☒ Other Federal Tax(es) [specify type(s) and period(s)]  MFT 31 = 2007, 2009 & 2010 (DM)

Note: If you need more space, use attachment and title it "Attachment to Form 656 dated _____." Make sure to sign and date the attachment.

(16-2)

| Catalog Number 16728N | www.irs.gov | Form **656** (Rev. 3-2018) |
|---|---|---|

On November 15, 2018, Brown's attorney, Mather, wrote to SO Feist acknowledging the IRS "letter returning the Offer in Compromise for Michael D. Brown due to an 'other investigation,'" and asserting "[t]his reason to return the Offer is bogus." In a phone call on February 22, 2019, Mather asked SO Feist to reconsider the return of the offer-in-compromise. SO Feist responded in a letter dated February 28 explaining that "[t]he Office of Appeals will maintain jurisdiction of your case, but I have requested further assistance from the Revenue Officer to address the issue of how much should be due," in an apparent reference to a determination of Brown's ability to pay. In a conversation on March 28, 2019, SO Feist told Mather that it would be difficult to overturn the reasons for the return of Brown's offer-in-compromise, but that the collection due process hearing would remain open during the pendency of the "other investigations" identified in the Laguna Group letter.[4]

Over a year later, Mather faxed SO Feist announcing his "position on the pending [collection due process] appeal" for Brown. He informed SO Feist that Brown had been making the $1,000 payments to the IRS proposed in his May 2018 offer-in-compromise and that the IRS was deemed to have accepted the offer-in-compromise by operation of law. Mather elaborated:

> The 24-month TIPRA statute in I.R.C.
> 7122(f) has expired. The 24 months started

---

[4] The investigation ultimately determined that there was collection potential beyond what Brown had offered in the returned offer-in-compromise. Due to the ongoing federal litigation regarding Brown's tax liability and SO Feist's personal health issues, the collection due process hearing was suspended well into 2020.

on May 7, 2018, the received date stamped on Form 656 (p. 9).  IRM 5.8.8.12(1).  Even if the 30-day extension from the COVID declaration applies, more than 24 months have lapsed.  Collection's letter could not return the OIC.  Only Appeals could do that. Appeals did not return the OIC.  The taxpayer has made all of the payments and complied with all other terms of the OIC.  This OIC is now deemed accepted by operation of law.

On August 12, 2020, the Office of Appeals sustained the notice of federal tax lien for the 2009 and 2010 tax years.  In its notice of determination, the IRS stated: "The request to find that the Offer in Compromise return letter dated November 5, 2018 was returned in error for lack of basis is denied.  The May 2018 Offer in Compromise was correctly returned by the collection division."  In the "Summary and Recommendation," the Office of Appeals further explained that the 24-month TIPRA tolling period ended as of November 5, 2018, the date Brown's offer-in-compromise was returned.  While the Office of Appeals acknowledged that it could have accepted the offer-in-compromise in the course of the collection due process hearing, it explained that the return letter satisfied the TIPRA provision's 24-month deadline.  The Office of Appeals also explained that, on the merits, Brown's offer-in-compromise of $320,000 did not warrant acceptance because the IRS had taken collection action, attaching the first $3 million of an $8 million payment for the sale of an asset attributed to Brown.

## II.

On August 31, 2020, Brown petitioned the Tax Court to challenge the Office of Appeal's notice of determination.[5] Brown moved for summary judgment under the theory that his offer-in-compromise had been accepted by operation of law pursuant to § 7122(f) because the Office of Appeals issued its notice of determination in August 2020, more than 24 months after the offer was submitted.  In opposition, the Commissioner argued that the operative rejection for purposes of § 7122(f) was the Laguna Group's return of the offer in November 2018, which was well within § 7122(f)'s 24-month "deemed acceptance" period.

On June 23, 2022, the Tax Court denied Brown's motion for summary judgment, agreeing with the Commissioner that Brown's offer-in-compromise had been "rejected by the Secretary" in November 2018 when the Laguna Group closed the file and returned the offer to Brown.  *See Brown v. Commissioner* (*Brown III*), 158 T.C. No. 9, 2022 WL 2255736, at *4 (June 23, 2022).  The Tax Court concluded that the time that the Office of Appeals spent reviewing the Laguna Group's decision to return the offer was not included as a part of the 24-month "deemed acceptance" period, and therefore, because the Collection Division had returned Brown's offer within 24 months of submission, Brown's offer-in-compromise was timely rejected and not deemed accepted by operation of law under § 7122(f).  *Id.*

---

[5] Brown's petition initially raised three issues: (1) whether SO Feist verified that proper procedures were followed; (2) whether Brown's offer-in-compromise was accepted by operation of law under § 7122(f); and (3) whether the return of Brown's offer was otherwise proper. Brown later conceded the first and third issues.

On October 28, 2022, the Tax Court issued a final order and decision sustaining the determinations set forth in the Office of Appeal's August 12, 2022, notice of determination.[6] This appeal followed.

## III.

We have jurisdiction to review final decisions of the Tax Court under 26 U.S.C. § 7482(a)(1). "We review the Tax Court's decision under the same standard as civil bench trials in district court." *Fargo v. Commissioner*, 447 F.3d 706, 709 (9th Cir. 2006); *see also* 26 U.S.C. § 7482(a)(1). "Accordingly, we review the Tax Court's conclusions of law, including interpretations of the I.R.C., de novo." *Laidlaw's Harley Davidson Sales, Inc. v. Commissioner*, 29 F.4th 1066, 1070 (9th Cir. 2022).

## IV.

### A.

We begin with an overview of the provisions of the Internal Revenue Code at issue here: 26 U.S.C. §§ 6320 and 6330, which set forth the procedures governing collection due process hearings, and 26 U.S.C. § 7122, which grants the IRS authority to compromise tax liabilities.

---

[6] After the Tax Court denied Brown's motion for summary judgment, the Commissioner moved for partial summary judgment on October 25, 2022, which was, in substance, a cross-motion on the § 7122(f) issue. On October 26, 2022, the parties jointly filed a stipulation of settled issues in which Brown conceded the two remaining issues raised in his petition. Finding that its June 23, 2022 opinion required a ruling for the Commissioner on the § 7122(f) issue as a matter of law, the Tax Court granted the Commissioner's partial motion for summary judgment on October 28, 2022.

## 1.   Sections 6320 and 6330

When a taxpayer neglects or refuses to pay the taxes he owes to the federal government, "a lien in favor of the United States [arises] upon all property and rights to property" belonging to the taxpayer.  26 U.S.C. § 6321.  To protect this lien, the IRS files a notice of federal tax lien on the taxpayer's property.  26 U.S.C. § 6323(a).  Section § 6320 provides that, upon filing of a notice of lien, the IRS must provide the taxpayer with written notice of the filing and the opportunity to request a hearing.  26 U.S.C. § 6320(a)(3).  Similarly, 26 U.S.C. § 6330 prohibits the IRS from levying upon a taxpayer's property unless the Secretary has notified the taxpayer of the intent to levy and the right to a hearing.  26 U.S.C. § 6330(a)(1).  A taxpayer who elects to challenge a notice of federal tax lien under § 6320 or the IRS's intent to levy under § 6330 is entitled to a collection due process hearing before the Office of Appeals.  *Id.* §§ 6320(b)(1), 6330(b)(1).[7]

Congress created the Office of Appeals as an entity of "strict impartiality as between the taxpayer and the Government," 26 C.F.R. § 601.106(f)(1), in response to the concern that "taxpayers who get caught in the IRS hall of mirrors have no place to turn that is truly independent and structured to represent their concerns," *Lewis v. Commissioner*, 128 T.C. 48, 60 (2007) (quoting 144 Cong.

---

[7] Both § 6320 and § 6330 hearings are governed by the procedures set forth in § 6330(c)–(e) and § 6330(g).  *See* 26 U.S.C. § 6320(c) ("For purposes of this section, subsections (c), (d) (other than paragraph (3)(B) thereof), (e), and (g) of section 6330 shall apply.").  Therefore, although Brown requested the instant due process hearing under § 6320 to contest the IRS's filing of a notice of federal tax lien, § 6330 sets forth the procedural provisions that govern Brown's collection due process hearing.

Rec. 14689 (1998) (statement of Senator Roth)). A collection due process hearing is therefore intended "as something more than just a rubber stamp for the Commissioner's determinations." *Id.* at 60. Rather, "the entire purpose behind the creation of the [collection due process] hearing was to provide taxpayers with greater due process to contest the IRS's levy and sale of their property." *Zapara v. Commissioner*, 652 F.3d 1042, 1045 (9th Cir. 2011).

To this end, § 6330(c)(2) allows a taxpayer to "raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy." 26 U.S.C. § 6330(c)(2)(A). This includes offers of collection alternatives, such as offers-in-compromise. *See* 26 U.S.C. § 6330(c)(2)(A)(iii). The IRS's Internal Revenue Manual explains that an offer-in-compromise submitted during a collection due process hearing is first sent to the Centralized Offer-in-Compromise Unit, which conducts the initial investigation and determines whether the offer-in-compromise is processable. *See* Internal Revenue Manual ("IRM") 5.8.4.15 (Sept. 24, 2020), 8.22.7.10.1.1(1) (Aug. 26, 2020). If the offer is found processable, it is then assigned to a Collection Division field office for further investigation to determine whether the offer should be accepted, rejected, or returned to the taxpayer. *See* IRM 8.22.7.10.1.1(2) (Aug. 26, 2020).

At the conclusion of the collection due process hearing, § 6330(c)(3) mandates that the assigned Appeals Officer issue a notice of determination that: (1) verifies that all applicable laws and procedures have been satisfied; (2) addresses all issues raised by the taxpayer under § 6330(c)(2), including any offers-in-compromise made by the taxpayer; and (3) explains whether the proposed collection action balances the government's need for

efficient collection of taxes with the taxpayer's concern that the collection be no more intrusive than necessary. 26 U.S.C. § 6330(c)(3); *see also* 26 C.F.R. § 301.6330-1(e)(3) (Q&A-E8) (explaining that a notice of determination must "respond to any offers by the taxpayer for collection alternatives"). Section 6330 does not set forth any time limit within which the Office of Appeals must consider these issues or make its determination. Indeed, the relevant IRS regulations expressly state that there is no "time within which Appeals must conduct a [collection due process] hearing or issue a Notice of Determination." 26 C.F.R. § 301.6320-1(e)(3) (Q&A-E9). After the Office of Appeals issues this notice, the taxpayer may challenge the Appeals Officer's determination by petitioning the Tax Court for review of the determination. 26 U.S.C. § 6330(d)(1).

## 2.   Section 7122

One of the collection alternatives the taxpayer may raise during a collection due process hearing is an offer-in-compromise. Section 7122 authorizes the "Secretary" to "compromise any civil or criminal case arising under the internal revenue laws prior to reference to the Department of Justice for prosecution or defense," and sets forth the exclusive procedures for doing so. 26 U.S.C. § 7122(a); *Laurins v. Commissioner*, 889 F.2d 910, 912 (9th Cir. 1989) ("The regulations and procedures for compromises under 26 U.S.C. § 7122 are the exclusive method of settling claims.") (citing *Schumaker v. Commissioner*, 648 F.2d 1198, 1199–1200 (9th Cir. 1981)). As used in § 7122, "Secretary" refers to "the Secretary of the Treasury *or* his delegate." *Compare* 26 U.S.C. § 7701(a)(11)(B) (emphasis added) (defining "Secretary" as "the Secretary of the Treasury or his delegate"), *with* 26 U.S.C. § 7701(a)(11)(A) (defining "Secretary of the Treasury" as "the Secretary of the

Treasury, personally, and shall not include any delegate of his."). The Tax Code further defines "delegate" as "any officer, employee, or agency of the Treasury Department duly authorized by the Secretary of the Treasury directly, or indirectly by one or more redelegations of authority, to perform the function mentioned or described in the context." 26 U.S.C. § 7701(a)(12)(A)(i). Thus, § 7122(a) permits any duly authorized delegate of the Secretary of the Treasury to compromise a taxpayer's liability. Because "[t]axpayers can offer to compromise their tax debt at many different points during the return-to-audit-to-assessment-to-collection lifecycle of their tax year…the IRS's system has developed in a way that directs [offers-in-compromise] to different IRS locations at different stages of collection." *Mason v. Commissioner*, 121 T.C.M. (CCH) 1485, 2021 WL 2018666, at \*6 (May 20, 2021).

Congress delegated authority to the Secretary to promulgate regulations "to determine whether an offer-in-compromise is adequate and should be accepted to resolve a dispute." 26 U.S.C. § 7122(d)(1). Pursuant to these regulations, the IRS may accept a taxpayer's offer-in-compromise (1) when there is a genuine dispute as to the existence or amount of the taxpayer's liability; (2) when there is doubt as to collectability, such as in the circumstance that the taxpayer's assets and income are less than the full amount of liability; or (3) to promote effective tax administration and prevent economic hardship to the taxpayer. 26 C.F.R. § 301.7122-1(b)(1)–(3)(i). Even if a taxpayer is unable to satisfy one of these three grounds, the IRS may compromise the taxpayer's liability if the taxpayer provides compelling public policy or equitable considerations for doing so. 26 C.F.R. § 301.7122-1(b)(3)(ii). However, the IRS may not compromise a

taxpayer's liability if doing so would undermine taxpayer compliance with tax laws. 26 C.F.R. § 301.7122-1(b)(3)(iii).

When a taxpayer submits an offer-in-compromise, the offer "becomes pending when it is accepted for processing" by the IRS. 26 C.F.R. § 301.7122-1(d)(2). The IRS may respond to a pending offer-in-compromise in one of three ways: it can accept the offer, 26 C.F.R. § 301.7122-1(e); it can reject the offer, 26 C.F.R. § 301.7122-1(f); or it can return the offer if the IRS determines it was submitted solely to delay collection or was otherwise "nonprocessable," 26 C.F.R. § 301.7122-1(d)(2). "An offer returned following acceptance for processing is deemed pending only for the period between the date the offer is accepted for processing and the date the IRS returns the offer to the taxpayer." *Id.*

In 2006, Congress grew concerned over the length of time that the IRS was taking to respond to taxpayer offers-in-compromise. *See* H.R. Rep. No. 109-455, at 234 (2006) (Conf. Rep.). To remedy this issue, Congress enacted § 7122(f), titled "Deemed acceptance of offer not rejected within certain period," as part of the Tax Increase Prevention and Reconciliation Act of 2005 ("TIPRA"), Pub. L. No. 109–222, § 509(b)(2), 120 Stat. 345, 363 (2006). That provision reads as follows:

> Any offer-in-compromise submitted under this section shall be deemed to be accepted by the Secretary if such offer is not rejected by the Secretary before the date which is 24 months after the date of the submission of such offer. For purposes of the preceding sentence, any period during which any tax liability which is the subject of such offer-in-

> compromise is in dispute in any judicial proceeding shall not be taken into account in determining the expiration of the 24-month period.

26 U.S.C. § 7122(f). This provision effectively operates as a statute of limitations on the IRS—if the IRS fails to act upon a taxpayer's offer within two years of its submission, the IRS loses its ability to reject that offer, and the offer is accepted by operation of law. The statute expressly tolls the running of the 24-month period for "judicial proceedings," but IRS Notice 2006-68 makes clear that "[t]he period during which the IRS Office of Appeals considers a rejected offer in compromise is not included as part of the 24-month period." Notice 2006-68, § 1.07, 2006-2 C.B. 105, 106. This is "because the offer was rejected by the Service within the meaning of section 7122(f) prior to consideration of the offer by the Office of Appeals." *Id.* The Notice also clarifies that "[a]n offer will not be deemed to be accepted if the offer is, within the 24-month period, rejected by the Service, [or] returned by the Service to the taxpayer as nonprocessable or no longer processable." *Id.* Accordingly, the IRS's return of an offer qualifies as a "rejection" under the TIPRA provision. *See also* 26 C.F.R § 301.7122-1(d)(2).

## B.

Brown and the dissent argue that because he submitted his offer-in-compromise during a collection due process hearing, only the Office of Appeals' notice of determination can operate as the "rejection" that terminates § 7122(f)'s 24-month period. This is plainly incorrect. The Collection Division's return of an offer-in-compromise constitutes a "rejection" under § 7122(f), regardless of whether that offer

was submitted as part of a collection due process hearing or not.

Brown's offer-in-compromise was accepted for processing by the Centralized Offer-in-Compromise Unit in May 2018, at which point it became "pending" and the 24-month clock started. *See* 26 C.F.R. § 301.7122-1(d)(2). The offer was then sent to the Laguna Group, which subsequently determined that the offer was nonprocessable on account of an ongoing investigation. The Laguna Group thereafter returned the offer-in-compromise to Brown in November 2018, at which point the offer was no longer pending.[8] *Id.* Because the offer was "returned by the Service to the taxpayer as nonprocessable" less than seven months after it was submitted, the offer was not pending for more than 24

---

[8] This chain of events also demonstrates that there are not "two tracks for the Internal Revenue Service to process offers-in-compromise," as Judge Lee finds in his concurring opinion. Conc. Op. 30. A closer examination of the path that Brown's offer-in-compromise traveled before being returned as nonprocessable makes this point readily apparent. After Brown requested a collection due process hearing and submitted his offer-in-compromise, SO Feist at the Office of Appeals—the entity in charge of collection due process hearings under §§ 6320 and 6330—forwarded Brown's offer to the Centralized Offer-in-Compromise Unit—the entity responsible for processing and investigating *all* offers-in-compromise in accordance with the current procedures adopted by the Commissioner. The Centralized Offer-in-Compromise Unit then referred Brown's offer to the Collection Division's Laguna Group for investigation. Once the Laguna Group returned Brown's offer-in-compromise as nonprocessable, the Office of Appeals hearing officer reviewed the propriety of that rejection as part of the due process hearing, and deemed it correct. Moreover, Brown could not appeal the rejection of the offer-in-compromise by the Collection Division to the Tax Court; it was only the Office of Appeals' determination that the rejection was proper that renders it appealable to the Tax Court (and our court). *See* 26 U.S.C. § 6330(d)(1).

months and, thus, was not "deemed to be accepted" for purposes of § 7122(f).  Notice 2006-68, § 1.07, 2006-2 C.B. 105, 106.  Notice 2006-68 makes this conclusion abundantly clear.  Section 1.07 provides that "[t]he period during which the IRS Office of Appeals considers a rejected offer in compromise is not included as part of the 24-month period because the offer was rejected by the Service within the meaning of section 7122(f) prior to consideration of the offer by the Office of Appeals."

Brown submits—and the dissent agrees—that because he made the offer during a collection due process hearing, § 6330's requirements alter the foregoing analysis.  He argues that only the Office of Appeals' notice of determination can effectuate a § 7122(f) "rejection" because it is the notice of determination, not the Collection Division's return, that is final and appealable.  Brown points to § 6330's mandate that the Office of Appeals must address and make the final determination on any collection alternative, including offers-in-compromise, raised during a collection due process hearing.  *See* 26 U.S.C. § 6330(c)(2)(A)(iii), (3)(B).  He also argues that it is the Office of Appeals' notice of determination, not the Collection Division's initial decision to return the offer, that the Tax Court has jurisdiction to review.  *See* 26 U.S.C. § 6330(d)(1).  Therefore, according to Brown, the duties that § 6330 impose upon the Office of Appeals render the Collection Division's role in the context of the due process hearing "procedurally meaningless."

But both Brown and the dissent conflate two distinct statutory requirements—§ 6330's mandate that Office of Appeals issue a final notice of determination following a collection due process hearing, and § 7122(f)'s requirement that the IRS act on an offer-in-compromise within 24 months

to prevent a "deemed acceptance." There is no authority, statutory or otherwise, that would indicate that the "rejection" required to terminate the 24-month period under § 7122(f) is the same action as the Office of Appeals' final determination of the collection due process hearing, in which the offer-in-compromise was but one collection alternative. Rather, the relevant statutory provisions, regulations, IRS guidance, and caselaw all clearly establish that the Collection Division may make the initial determination to return a taxpayer's offer, and that the Collection Division's return of that offer, not the Office of Appeals' notice of determination, stops the 24-month clock.

The Internal Revenue Manual explains that the Secretary has delegated the initial review of all offers-in-compromise—including those submitted during a collection due process hearing—to the Collection Division. *See* IRM 5.8.5.15 (Sept. 24, 2020), 8.22.7.10.1.1(1) (Aug. 26, 2020).[9] Although "[t]he Internal Revenue Manual does not have the force of law and does not confer rights on taxpayers," *Fargo*, 447 F.3d at 713 (9th Cir. 2006), it is not "legal error for the *Commissioner* to be guided by his own guidelines," *Keller v. Commissioner*, 568 F.3d 710, 721 (9th Cir. 2009); *see also Marks v. Commissioner*, 947 F.2d 983, 986 n.1 (D.C. Cir. 1991) ("It is well-settled … that the provisions of the manual are directory rather than mandatory.").

---

[9] The Commissioner amended certain provisions of the IRM in the fall of 2020, soon after the Office of Appeals issued the notice of determination here on August 12, 2020. However, these provisions are substantially identical to those in place at the time that Brown's collection due process hearing was ongoing. The dissent's speculation that the IRS changed these IRM provisions *because* of Brown's case, *see* Diss. Op. 52, is just that—speculation.

Pursuant to the Internal Revenue Manual's guidance, the Collection Division makes the initial determination as to the offer's processability, and then "investigates the offer and can either accept it, provide a recommendation to reject it, or determine whether the offer should be returned to the taxpayer." *Brown I*, 2019 WL 4415190, at *5 (citing IRM 8.22.7.10.1.1(2) (Sept. 23, 2014)); *see also* IRM 8.22.7.10.1.1(2) (Aug. 26, 2020) (same). If the Collection Division returns the offer, the Office of Appeals must "first confirm that the return was appropriate" and then note "that the basis for the return was correct" in its final notice of determination. IRM 8.22.7.10.1.1(4). But the Internal Revenue Manual makes clear that it is the Collection Division's initial return of the offer, not the Office of Appeals' determination of whether that return was proper, that "will result in the closing of the TIPRA 24-month period." IRM 8.22.7.10.1.3(5) (Aug. 26, 2020).

Indeed, Brown has previously tried, and failed, to advance his theory that the timing of the Office of Appeals determination controls the § 7122(f) period in proceedings over tax years other than the two before us now. As here, the litigation in *Brown I* and *Brown II* began with Brown's request for a collection due process hearing after receiving notice of the filing of a notice of federal tax lien for his then outstanding tax liability. *Brown I*, 2019 WL 4415190, at *1–2. And, as here, Brown submitted an offer-in-compromise as a collection alternative to the Office of Appeals. *Id.* at *3. After receiving the offer on November 16, 2016, the Office of Appeals forwarded it to the Collection Division's Long Beach Group. *Id.* On April 6, 2017, the Long Beach Group sent a letter to Brown returning his offer-in-compromise. *Id.* On August 11, 2017, less than a year after Brown submitted the offer, the Appeals Officer issued a notice of

determination concluding that "the basis determined by Collection to return your Offer in Compromise was appropriate." *Id.*

In *Brown I* and *Brown II*, Brown argued that the Appeals Officer assigned to his case abused her discretion in conducting the collection due process hearing and, thus, the notice of determination was void. Because he asserted there was no *valid* determination from the Office of Appeals within 24 months, Brown argued that his offer was accepted by operation of law under § 7122(f).

The only difference between Brown's collection due process hearing in *Brown I* and *Brown II* and his collection due process hearing at issue here is that in the prior litigation, both the Collection Division's return of the offer and the Office of Appeal's notice of determination were issued within two years of the offer's submission. But this did not stop Brown from making the same argument that he makes here—that the § 7122(f) 24-month time period stopped running when the Office of Appeals issued its determination, and not when the Collection Division returned the offer-in-compromise as nonprocessable—and that the IRS failed to reject his offer-in-compromise within 24 months after it was submitted, and therefore it was "deemed accepted" by operation of law under § 7122(f). *Id.* at *7. The Tax Court rejected this argument, concluding "[t]he Long Beach Group correctly returned [Brown's] [offer] on April 6, 2017, at which point his [offer] was considered closed. Accordingly, [Brown's offer-in-compromise] is not deemed accepted by operation of law under the provision of section 7122(f)." *Id.* We agreed. *See Brown II*, 826 Fed. App'x at 674. Therefore, both the Tax Court and our court, in *Brown I* and *Brown II*, previously held that when a taxpayer submits an offer-in-compromise in the context of a collection due process

hearing, the Collection Division's return, not the Office of Appeals' notice of determination, terminates the 24-month period in § 7122(f).

Brown has not submitted any authority that would support his contrary view of the law. Indeed, the governing regulations, Notice 2006-68, the Internal Revenue Manual, *Brown I*, and *Brown II* all confirm that the IRS's initial decision to return an offer-in-compromise constitutes a "rejection" under § 7122(f)'s "deemed acceptance" provision.[10]

We see no conflict between this conclusion and § 6330's purpose of "provid[ing] taxpayers with greater due process to contest the IRS's levy and sale of their property." *Zapara*, 652 F.3d at 1045. The Collection Division's return of an offer-in-compromise simply stops the running of the 24-month period and precludes acceptance of the offer by operation of law. This action does not interfere with the Office of Appeals' statutory obligation to render the final decision on any offer-in-compromise raised during a collection due process hearing, nor does it prevent the Office of Appeals from further considering the propriety of an offer-in-compromise, or the propriety of the Collection Division's return of the offer-in-compromise, as the Office of Appeals did here. *See* 26 U.S.C. § 6330(c)(3); *Mason*, 2021 WL 2018666, at *10 (explaining that the Office of Appeals must independently review an offer-in-compromise

---

[10] The dissent, much like Brown himself, offers no authority other than its own creative interpretation of the statutory text to support its conclusion, and urges us to ignore the abundance of existing authority supporting the IRS's position that the initial decision to return an offer-in-compromise is a "rejection" under § 7122(f). *See generally* Diss. Op. We decline to do so.

submitted during a collection due process hearing to fulfill its duties under § 6330). SO Feist reviewed the Collection Division's reasons for returning Brown's offer and determined the return was correct. But SO Feist also considered the merits of Brown's offer and concluded that it was inadequate because "at least $3 million can be paid toward the federal tax debt and perhaps much more." The Collection Division's return of the offer did not prevent SO Feist from fulfilling his statutory duty to conduct an independent review of the offer-in-compromise before rendering the final decision.

Furthermore, an Appeals Officer must consider *all* issues raised by the taxpayer during a due process hearing. 26 U.S.C. § 6330(c)(2). Although some taxpayers request due process hearings for the sole purpose of submitting an offer-in-compromise, a taxpayer "may raise at the hearing *any* relevant issue relating to the unpaid tax," including challenges to the underlying liability or appropriateness of the collection action, spousal defenses, or other collection alternatives. *Id.* (emphasis added). As the Tax Court explained, this could take "a considerable amount of time and possibly prolong the [hearing] beyond 24 months." *Brown III*, 158 T.C. No. 9, at *7. "[T]here is no reason to believe that Congress, in enacting section 7122(f), intended to place a limit on the duration of the [collection due process] proceeding," merely because offers-in-compromise are one type of issue that can be raised during these hearings. *Id*. The dissent offers no authority indicating that § 7122(f) was enacted to cut short due process hearings, which are designed to protect a taxpayer from wrongful levy and sale of their property. Indeed, the regulations governing collection due process hearings are to the contrary: they explain that there is no limit on the "time within which

Appeals must conduct a [collection due process] hearing," and require only that an Appeals Officer "attempt to conduct a [collection due process] hearing and issue a Notice of Determination as expeditiously as possible under the circumstances." *See* 26 C.F.R. § 301.6320-1(e)(3) (Q&A-E9).

Finally, the IRS's conduct here satisfied the objectives of § 7122(f). Congress enacted this provision so that taxpayers who submit offers-in-compromise would not be left waiting years before they learned whether their offers were rejected. Here, the IRS acted on Brown's offer in less than seven months. Brown then had the opportunity to contest the reasons for the return during the course of his due process hearing. Although Brown was unsuccessful in overturning the Collection Division's rejection of his offer, similarly situated taxpayers might be able to successfully amend their offers to secure a different outcome during the due process hearing.

## V.

We conclude that Brown's offer-in-compromise was not deemed accepted by operation of law under § 7122(f). The judgment of the Tax Court is **AFFIRMED**.

---

LEE, Circuit Judge, concurring in the judgment:

Albert Einstein once wisecracked, "The hardest thing in the world to understand is income taxes." While that quip was obviously hyperbolic, it has a kernel of truth to it, as this case shows: we have three separate opinions with vastly different readings of two fairly brief provisions in the tax code.

We confront this thorny issue of statutory interpretation because Michael Brown failed to pay his taxes and now has a whopping $50 million tax liability. He, however, claims he owes nothing more because he submitted and paid an offer-in-compromise of $320,000 that the government implicitly accepted by failing to reject it within 24 months. I agree with Judge Wardlaw that we should affirm the tax court's ruling that the offer-in-compromise was not deemed accepted through operation of law. Judge Wardlaw's opinion maintains that the IRS rejected Brown's offer-in-compromise within 24 months as required under 26 U.S.C. § 7122(f). But Judge Bumatay's dissent (and Brown) argue that the offer-in-compromise was not timely denied under the statute because the wrong person in the IRS rejected it.

I write separately because I believe that the 24-month time limitation in § 7122(f) does not even apply to the § 6330 proceeding that Brown invoked. The text and structure of the tax code, along with common sense, suggest that Congress created two tracks for the Internal Revenue Service to process offers-in-compromise.

The first track is § 7122—an expedited administrative process dealing solely with standalone offers-in-compromise, which offers no judicial review but guarantees resolution within 24 months. The second is § 6330—a broader proceeding addressing a wide range of due process concerns related to the IRS's lien or levy on a taxpayer's property, which offers judicial review but is not bound by any timeline.

By raising his offer-in-compromise as part of a collection due process hearing under § 6330, Brown opted to proceed under the second track. On appeal, he tries to have it both ways: He demands to receive the benefits of the first type of

proceeding (the 24-month time limit) but also enjoy the additional due process protections of the second type of proceeding (judicial review). But the tax code is not Burger King—Brown cannot have it his way. Brown elected to raise his offer-in-compromise under the statutory provision that offered him increased due process, the ability to adjudicate a greater number of issues, and even the very opportunity to appeal to this court. In exchange, he gave up the benefits of § 7122(f). So whether the government timely rejected his offer-in-compromise within 24 months is beside the point.

\* \* \* \*

Taxpayers seeking to settle their tax debt for less than the full amount owed may make an offer-in-compromise to the IRS. There are two main tax code provisions relevant to taxpayers' offers-in-compromise: § 7122 and § 6330.

**Section 7122**: This section creates an administrative process meant for addressing a taxpayer's standalone submission of an offer-in-compromise. *See generally* 26 U.S.C. § 7122(b)–(f). Although Congress left the IRS with significant discretion in formulating guidelines for evaluating whether to accept those offers, *see id*. § 7122(d), it provided two important procedural restrictions.

First, Congress tasked the IRS with creating administrative review procedures for a rejected offer-in-compromise. *Id*. § 7122(e). The IRS has assigned processing and investigation of offers-in-compromise to the IRS' Centralized Offer-in-Compromise (COIC) Unit and Collection Division. *See, e.g.*, IRS Manual 8.22.7.10.1.1 (Aug. 26, 2020). If those branches reject the taxpayer's offer-in-compromise, then under § 7122(e)(2), he can appeal only to the Independent Office of Appeals, an independent

organization within the IRS. *See also* 26 C.F.R. § 301.7122-1(f)(5). There is no right to judicial review.

And second, in the case that the IRS neither accepts nor rejects the taxpayer's offer-in-compromise within 24 months, it is "deemed to be accepted" under § 7122(f). As a result, the § 7122 process is (relatively) quick and easy: the IRS is effectively subject to a 24-month statute of limitations on processing offers-in-compromise, and the taxpayer is limited to administrative review.

**Section 6330:** In contrast to § 7122, § 6330 prescribes a robust process meant for addressing a host of due process concerns, including offers-in-compromise. When a taxpayer is delinquent on his tax debts, the federal government may impose a lien on the taxpayer's property. 26 U.S.C. § 6321. But before the IRS can file a notice of lien or levy on that property, it must provide the taxpayer with notice of his right to a collection due process (CDP) hearing. *Id*. §§ 6320(a), 6330(a). At that CDP hearing, the taxpayer may raise "any relevant issue relating to the unpaid tax or the proposed levy," including "appropriate spousal defenses," "challenges to the appropriateness of collection actions," and "offers of collection alternatives," one form of which is an offer-in-compromise. *Id*. §§ 6320(c), 6330(c)(2)(A)(i)–(iii).

The Independent Office of Appeals—the same branch that hears administrative appeals of rejected offers-in-compromise in a § 7122 proceeding—is not the appellate body in a § 6330 proceeding. Rather, it is charged with both conducting CDP hearings, *id*. §§ 6320(b)(1), 6330(b)(1), and with issuing "determination[s]" that consider, among other things, all issues properly raised by the taxpayer, *id*. §§ 6320(c), 6330(c)(3). Importantly, § 6330 does not bind the Independent Office of Appeals to any timeline. *See, e.g.*,

26 C.F.R. § 301.6320-1(e)(3) (Q&A–E9) (there is no set "period of time within which Appeals must conduct a CDP hearing"). But once the determination has issued, a dissatisfied taxpayer has the option of judicial review: the taxpayer may appeal the agency's determination to the tax court and then ultimately to a circuit court of appeals. 26 U.S.C. §§ 6320(c), 6330(d)(1).

These two procedures stand in contrast to each other. Section 7122 creates a procedure that is narrow but efficient. Section 6330 creates a procedure that is comprehensive, judicially appealable, and adjudicated in the first instance by § 7122's appellate body—but is potentially less timely. This is a trade-off common in the law. For example, an arbitration may be faster and more cost-effective than litigation, but it offers limited appealability, is not overseen by an Article III judge, and only covers issues committed to arbitration.[1]

Brown's primary argument is that he should be able to reap the benefits of both proceedings. After the IRS filed a notice of federal tax lien against Brown to recover on his outstanding 2009 and 2010 tax liabilities, Brown requested a § 6330 CDP hearing during which he submitted an offer-in-compromise. Despite having raised his offer-in-compromise under the § 6330 CDP proceeding, Brown contends that § 7122(f)—the statutory subsection that creates the 24-month limitations periods for the IRS to process standalone offers-in-compromise—should apply. And because, his argument goes, the Independent Office of Appeals is charged with adjudicating CDP hearings, only

---

[1] And, of course, the process prescribed in § 6330 is not available to all taxpayers. If the IRS has not filed a notice of federal tax lien or attempted to levy on a taxpayer's property, for example, then he may only submit a standalone offer-in-compromise under § 7122.

that branch's rejection of Brown's offer-in-compromise could have stopped the clock for § 7122(f)'s purposes.

But Brown's argument founders as a matter of statutory interpretation.  To start, the text of § 7122(f) states that it applies only to "[a]ny offer-in-compromise submitted under *this section*"—*i.e.*, any offer-in-compromise submitted under § 7122.  26 U.S.C. § 7122(f) (emphasis added).  So, by its own terms, § 7122(f)'s 24-month limitations period does not apply to offers-in-compromise submitted under § 6330 as part of a CDP hearing.

At oral argument, the parties assumed that all offers-in-compromise—whether made as standalones or during a CDP hearing—are submitted under § 7122, as it is the only section that authorizes the IRS to compromise tax cases.  *See* 26 U.S.C. § 7122(a). But while § 7122(a) creates the sole authority for the IRS to *accept* an offer-in-compromise, § 7122 does not create the only path for a taxpayer to *submit* an offer-in-compromise.  Taxpayers can submit offers-in-compromise under either § 7122 or § 6330—the IRS's statutory authority to accept, as granted in § 7122(a), applies equally to both, and says nothing about the rules mandated for each procedural vehicle.

Further, nothing in the text or structure of § 6330 suggests that the procedural requirements for processing an offer-in-compromise under § 7122 are incorporated into § 6330.  For example, we know that § 7122(e) is not incorporated into a § 6330 CDP proceeding because § 7122(e) states that the IRS "shall establish procedures . . . which allow a taxpayer to *appeal* any rejection of such [offer-in-compromise] to the Internal Revenue Service Independent Office of Appeals."  26 U.S.C. § 7122(e)(2) (emphasis added).  As noted earlier, the Independent Office

of Appeals serves as the appellate body in a § 7122 proceeding but it acts as the initial decision-maker in a § 6330 CDP hearing (which has the courts as the appellate body). So subsection § 7122(e)—which refers to the Independent Office of Appeals as the appellate body—cannot apply to a § 6330 CDP hearing (in which the Independent Office of Appeals serves as the initial decision-maker).[2]

The government also cites various regulations and administrative materials indicating that the IRS applies § 7122(f)'s 24-month clock to offers-in-compromise submitted during CDP hearings. But we need not accept the IRS's interpretation of the tax code—after all, we must "exercise [our] independent judgment in deciding whether an agency has acted within its statutory authority." *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024).

Finally, it makes little sense to import § 7122(f)'s 24-month limitations period to a § 6330 CDP hearing. During a CDP hearing, the Independent Office of Appeals might have to address any number of complex issues raised by the taxpayer because the statute allows a taxpayer to raise "any

---

[2]   The Independent Office of Appeals referred Brown's offer-in-compromise to the IRS' COIC Unit for processing, which in turn referred Brown's offer to the IRS' Collection Division's Laguna Group for investigation. The Collection Division's return of Brown's offer was eventually incorporated into the notice of determination issued to Brown by the Independent Office of Appeals. It is unclear from the text of § 6330 whether the Independent Office of Appeals, which is charged with "consider[ing]" Brown's offer-in-compromise, 26 U.S.C. § 6330(c)(3), may offload the investigation of that offer onto another branch of the IRS. But because the parties have not raised this issue, I assume without deciding that the Independent Office of Appeals acted within its statutory authority.

relevant issue relating to the unpaid tax or the proposed levy." 26 U.S.C. § 6330(c)(2)(A).  For example, a taxpayer may claim that she's wrongfully on the hook for reporting errors made by her spouse.  *See, e.g.*, *id*. § 6330(c)(2)(A)(i); 26 C.F.R. § 301.6330-1(e)(3) (Q&A–E4).  Or she may attempt to negotiate the posting of a bond instead of the imposition of a lien on her property.  *See, e.g.*, 26 U.S.C. § 6330(c)(2)(A)(iii); 26 C.F.R. § 301.6330-1(e)(3) (Q&A–E6).  Typically, a § 6330 CDP hearing has no time limit because that section imposes none.  But if we follow the parties' interpretation of the statute, then § 7122(f)'s 24-month limitations period comes into play during a § 6330 CDP hearing only if a taxpayer happens to raise an offer-in-compromise.

So if a taxpayer raises these complex issues—but does not make an offer-in-compromise—then the IRS would *not* have to resolve them within 24 months.  But if a taxpayer raises these same complex issues—*and* raises an offer-in-compromise at the same time—then the 24-month clock starts ticking.  In other words, the agency has a 24-month time limit only if it has even more issues on its plate, according to the parties' reading of the statute.  That makes no sense.

Nor would a 24-month limitations period even be particularly meaningful to a taxpayer who chooses to submit his offer-in-compromise under § 6330.  After all, one of the key benefits of submitting an offer-in-compromise during a CDP hearing is the possibility of judicial review.  If the Independent Office of Appeals issues a notice of determination rejecting or returning the taxpayer's offer-in-compromise, then he may petition for review to the tax court, then a circuit court, and perhaps even the Supreme Court.  26 U.S.C. §§ 6330(d)(1), 7482(a)(1).  That process could easily

take years.  Brown, for example, submitted the offer-in-compromise relevant to this appeal around six years ago, in 2018. Through § 6330, Congress intended to offer taxpayers increased due process—but here, the price of due process is time.

In short, I believe that § 7122(f) does not apply to offers-in-compromise submitted during CDP hearings under § 6330.  Brown's offer-in-compromise could thus have never been deemed accepted through operation of law.  For that reason, I concur in the judgment.

---

BUMATAY, Circuit Judge, dissenting:

When the Internal Revenue Service hits a taxpayer with a tax assessment, Congress provides several ways to settle the bill.  Of course, paying the bill is one.  Challenging the liability may be another.  But Congress has said that a taxpayer may try to reach a compromise with the IRS for less than the amount owed.  When a taxpayer seeks a compromise, it's called an "offer-in-compromise."  26 U.S.C. § 7122.  The Tax Code sets out procedures and deadlines to resolve "offers-in-compromise," including requiring that offers be "rejected by the Secretary" within 24 months or else be "deemed . . . accepted."  *Id.* § 7122(f).

But that's not all that Congress has offered taxpayers. The Tax Code also entitles taxpayers extra protection when they face a lien or levy—review by an "[i]mpartial officer" within the IRS Independent Office of Appeals.  *See id.* §§ 6320(b)(1), (3), 6330(b)(1), (3).  This review is called a Collection Due Process ("CDP") hearing.  As its name implies, its purpose is to afford taxpayers added procedural

due process by officials not involved in the tax assessment. The Tax Code creates a right to a CDP hearing and provides the procedures for those hearings. *See id.* §§ 6320, 6330. During a hearing, the taxpayer may "raise . . . any relevant issue" that the IRS should consider before it collects, including an "offer-in-compromise." *Id.* § 6330(c)(2)(A).

But what happens when these two tax provisions intersect? Michael Brown received a notice of an IRS tax lien based on failing to pay taxes. *See id.* § 6323. Brown requested a CDP hearing as the law entitles him. After being assigned an appeals officer in the Independent Office of Appeals, Brown submitted an offer-in-compromise. Rather than decide the offer himself, the appeals officer forwarded it to the IRS's Centralized Offer-in-Compromise Unit (sometimes called "COIC") within the Collection Division. The Collection Division is not part of the Independent Office of Appeals. And the Collection Division later sent Brown a letter closing the file on his offer-in-compromise and "returning" it because of other pending investigations against Brown.

Brown disagreed with the Collection Division and promptly raised it with the appeals officer hearing his case. The appeals officer did not act quickly. After 24 months had passed from his submission of the offer, Brown notified the appeals officer that he believed his offer must be "deemed . . . accepted" under § 7122(f). This prompted the appeals officer to respond. The officer concluded that the Collection Division's letter stopped the clock under § 7122(f) and then independently determined that the Collection Division's return of the offer was correct. On appeal, the Tax Court agreed with the appeals officer and Brown now appeals to our court.

So this case requires us to answer the "who" and "when" of the rejection of an offer-in-compromise raised in a CDP hearing. *Who* has the power to reject the offer-in-compromise within the IRS? And *when* must they act?

As should always be the case, the answer lies in the ordinary meaning of the text. And the text governs regardless of the IRS's guidance on the law. After all, it has always been our job to "apply [our] judgment *independent* of the political branches when interpreting the laws those branches enact." *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024) (simplified). Gone are the days when we deferred to the government's interpretation of the law simply because it's the government.

Turning to that text, the answer is clear. For *who*, an "[i]mpartial officer" within the IRS Independent Office of Appeals must make the decision on the offer-in-compromise. *Id.* § 6330(b)(1)–(3). For *when*, the offer-in-compromise must be "rejected by the Secretary" of the Treasury within 24 months or it "shall be deemed . . . accepted." *Id.* § 7122(f). Together, these provisions mean that the appeals officer here—not the Collection Division—must have "reject[ed]" Brown's offer-in-compromise within 24 months. Simply, when the taxpayer demands his rights under a CDP hearing, Congress had said that the appeals officer is the *only decider*. Because the appeals officer did not decide here, Brown's offer should be deemed accepted.

But the IRS claims otherwise. It asserts unfettered discretion to delegate who makes the decision on the offer-in-compromise. This position is as novel as it is wrong. Back in 2013, and until 2020, the IRS expressly agreed with Brown that an appeals officer must accept, reject, or return

the offer-in-compromise before the 24-month deadline or it would be deemed accepted.  The IRS's latest flipflop doesn't control this case.  As I've said before, "we are [a] nation of laws, not bureaucrats" and "[i]t's the plain meaning of the Tax Code that governs this case—not the whims of [the] IRS[.]"  *Seaview Trading v. Comm'r of Internal Revenue*, 62 F.4th 1131, 1139 (9th Cir. 2023) (en banc) (Bumatay, J., dissenting).

Because the offer-in-compromise was not rejected within the time set by Congress, I would reverse the Tax Court and respectfully dissent.

## I.

## A.

### The Tax Law Framework

This case involves the interplay of two important tax provisions.  First, § 7122 governs offers-in-compromise and imposes various procedural and substantive requirements for considering those offers.  Second, §§ 6320 and 6330 establish CDP hearings for taxpayers, like Brown, who receive an IRS notice of a lien or levy.  Resolving this case requires understanding both.

## 1.

### Offers-in-Compromise

Start with offers-in-compromise.  An offer-in-compromise is an agreement between the IRS and the taxpayer to settle a tax debt for less than the full amount owed.  *See Brown v. Comm'r of Internal Revenue*, 58 F.4th 1064, 1065 (9th Cir. 2023).  Several grounds for compromise exist, such as a taxpayer's inability to pay the full amount or economic hardship.  *See* 26 C.F.R. § 301.7122-1(b)(2)–(3).

Section 7122 governs offers-in-compromise. In it, Congress ordered the IRS to "prescribe guidelines for [its] officers and employees . . . to determine whether an offer-in-compromise is adequate and should be accepted to resolve a dispute." 26 U.S.C. § 7122(d)(1). For rejected offers-in-compromise, Congress directed the IRS to "establish procedures" "for an independent administrative review of any rejection of a proposed offer-in-compromise" before communicating a rejection to the taxpayer. *Id.* § 7122(e)(1). Congress also granted "appeal [of] any rejection of such offer or agreement to the [IRS] Independent Office of Appeals." *Id.* § 7122(e)(2). And finally, Congress set time limits for consideration of offers-in-compromise:

> Any offer-in-compromise submitted under this section shall be deemed to be accepted by the Secretary if such offer is not rejected by the Secretary before the date which is 24 months after the date of the submission of such offer. For purposes of the preceding sentence, any period during which any tax liability which is the subject of such offer-in-compromise is in dispute in any judicial proceeding shall not be taken into account in determining the expiration of the 24-month period.

*Id.* § 7122(f).[1] Thus, when the IRS fails to "reject[]" an offer within 24 months, it is deemed "accepted" and the taxpayer gets his compromise.

---

[1] The second sentence of § 7122(f) effectively tolls the 24-month limit during the pendency of "any judicial proceeding" related to the tax liability involved in the offer-in-compromise. During oral argument, the

As directed by Congress, the IRS has promulgated regulations governing offers-in-compromise. Those regulations provide for four options. First, the offer may be rejected on the merits. 26 C.F.R. § 301.7122-1(f). Second, the offer may be accepted. *Id.* § 301.7122-1(e). Third, the offer can be withdrawn by the taxpayer. *Id.* § 301.7122-1(d)(3). And fourth, the offer can be "returned" by the IRS. *Id.* § 301.7122-1(d)(2). The IRS may "return" the offer if (1) it does not "contain sufficient information" and the taxpayer does not submit additional information within a reasonable time, (2) it "was submitted solely to delay collection," or (3) it "was otherwise nonprocessable." *Id.*

The IRS's view of "returns" is ultimately contradictory. According to the IRS, a "return" is both a rejection and not a rejection. On the one hand, when the IRS returns the offer, the IRS will not consider it a "rejection" for appellate purposes under § 7122(e). *See id.* § 301.7122-1(f)(5)(ii) ("Where a determination is made to return offer documents because the offer to compromise was nonprocessable, . . . the return of the offer does not constitute a rejection of the offer for purposes of this provision and does not entitle the taxpayer to appeal the matter to Appeals[.]"). So, in the normal course, a taxpayer has no right to appeal a "return" of an offer-in-compromise. On the other hand, when it comes to § 7122(f)'s requirement of a rejection within 24 months, the IRS treats the "return" differently. In that situation, the IRS views a "return" as a "rejection" to stop the 24-month clock. According to the IRS, "[a]n offer will not be deemed to be accepted if the offer

IRS belatedly suggested that this provision may apply here because of Brown's other tax litigation. But this argument was not raised in its briefing and so it's waived.

is, within the 24-month period, . . . returned by the Service to the taxpayer as nonprocessable or no longer processable." IRS Notice 2006-68, § 1.07, 2006-2 C.B. 105, 106. So, there you have it—the IRS considers a "return" a "reject[ion]" under § 7122(f) but not a "rejection" under § 7122(e). Like the wave-particle duality of light, this is hard to comprehend.[2]

In line with Congress's directive, the IRS has a multi-step procedure for adjudicating offers-in-compromise submitted outside the CDP context. First, an employee in the Collection Division will assess the offer. IRS Manual ("IRM") 5.8.4. (Sept. 24, 2020); IRM 8.22.7.10.1.1 (Aug. 26, 2020). If an offer is returned, the taxpayer will generally not be allowed to have that decision reviewed. 26 C.F.R. § 301.7122-1(d)(2), (f)(5). If the offer is rejected, "an independent administrative review of the proposed rejection" will occur before it's communicated to the taxpayer. *Id.* § 301.7122-1(f)(2). A taxpayer may then appeal the rejection to the Independent Office of Appeals. *Id.* § 301.7122-1(f)(5). There's no further avenue of appeal to the Tax Court. Thus, the traditional review process roughly looks like this:

---

[2] And how is the taxpayer supposed to know a return's effect on § 7122(f)? It's not in the regulations. To find this answer, the taxpayer must dig into what's known as an IRS Tax Bulletin—an IRS pronouncement that does not have the "force and effect" of IRS regulations but is nonetheless "precedent." Why is there no clear notice provided in IRS regulations? Again, I do not know. Perhaps putting these two contradictory readings together in one regulation was too much for the IRS. In any case, this duality isn't the subject of this appeal. I accept that the "return" here is properly a "rejection" under § 7122(f).



## 2.

## Collection Due Process Hearings

That brings me to "collection due process" procedures. In 1998, Congress created CDP procedures "to provide taxpayers with greater due process to contest the IRS's" actions that deprive them of property. *Zapara v. Comm'r of Internal Revenue*, 652 F.3d 1042, 1045 (9th Cir. 2011). Taxpayers are entitled to these greater protections when they receive a notice of tax lien, 26 U.S.C. § 6320, or a notice of intent to levy, *id.* § 6330. In either case, the taxpayer has a "right" to a hearing if requested. *See id.* §§ 6320(b)(1), 6330(b)(1). Congress specified the procedures and substantive requirements of CDP hearings. It included everything from who must hold the hearing, to what matters must be considered if raised, to how an appeal may be taken from a final determination. *Id.* §§ 6320, 6330. Several provisions are important here.

First, Congress expressly authorized taxpayers to bring offers-in-compromise within CDP proceedings. Under the law, a taxpayer "may raise . . . any relevant issue relating to the unpaid tax or the proposed levy, including . . . offers of collection alternatives, which may include . . . an offer-in-compromise." *Id.* § 6330(c)(2)(iii).

Second, Congress prescribed *who* decides the issues raised in CDP hearings. And Congress could not be clearer: any hearing "shall be held by the [IRS] Independent Office of Appeals." *Id.* §§ 6320(b)(1), 6330(b)(1). Unless waived, Congress further provided that the hearing "shall be conducted" by an "[i]mpartial officer"—meaning "an officer or employee who has had no prior involvement with" the assessment of "the unpaid tax." *Id.* §§ 6320(b)(3), 6330(b)(3). In making a "determination" in the hearing, the

"appeals officer" must verify that the IRS has met "any requirements of any applicable law or administrative procedure," consider the "issues raised" by the taxpayer, and balance the "need for the efficient collection of taxes with the legitimate concern" that any collection not be "more intrusive than necessary." *Id.* § 6330(c)(1), (3). If the taxpayer disagrees with an appeals officer's "determination," the taxpayer may appeal directly to the Tax Court. *Id.* §§ 6320(d)(1), 6330(d)(1). And, unlike in the normal course, both rejections *and* returns are appealable. *Id.* §§ 6320(d)(1), 6330(d)(1).

And what about the Independent Office of Appeals? What's so special about that office? It was another IRS office designed by Congress to safeguard taxpayers. *See id.* § 7803(e). Congress established the office to "resolve Federal tax controversies without litigation," and to do so in a way that is "fair and impartial," "promotes a consistent application and interpretation of, and voluntary compliance with, the Federal tax laws," and "enhances public confidence in the integrity and efficiency of the [IRS]." *Id.* § 7803(e)(3). So the role of the Independent Office of Appeals is to decide tax disputes without any thumb on the scale for the IRS.

Thus, regardless of any internal procedures the IRS implements for offers-in-compromise in the normal course, Congress mandates that an "appeals officer" within the Independent Office of Appeals decides the issues in CDP hearings. Compared to the traditional process above, the CDP review process should go like this:



**B.**

### Independent Office of Appeals Must Reject Offer Within 24 Months

Given this statutory framework, whenever a taxpayer raises an offer-in-compromise in a CDP proceeding, an appeals officer within the Independent Office of Appeals—

and that officer alone—must act on the offer within 24 months under § 7122(f).  The IRS argues that the Collection Division may "return" the offer and that "return" counts as a "rejection" under § 7122(f).  But this ignores the crucial distinction between CDP hearings and traditional IRS proceedings.  They are not the same and cannot be treated the same.  When we're in the realm of CDP hearings, Congress mandates that the appeals officer decide the issue and any action by the Collection Division is irrelevant under the law.  Simply put, when a taxpayer raises an offer in a CDP hearing, only the Independent Office of Appeals may stop the clock.  Since that didn't happen, Brown's offer should have been deemed accepted.

## 1.

Let's zero in on the operative text of the time limit. Section 7122(f) requires that an offer-in-compromise is deemed accepted if it is "not *rejected by the Secretary* before the date which is 24 months after the date of the submission of such offer."  26 U.S.C. § 7122(f) (emphasis added).  First, "the Secretary" refers to "the Secretary of the Treasury or his delegate."  *Id.* § 7701(a)(11).  And "his delegate" means "any officer, employee, or agency of the Treasury Department duly authorized by the Secretary of the Treasury directly, or indirectly by one or more redelegations of authority, to perform the function mentioned or described in the context[.]"  *Id.* § 7701(a)(12).  To "reject" means "to refuse to accept, consider, submit to, take for some purpose, or use" or "to refuse to hear, receive, or admit."  Merriam-Webster's Collegiate Dictionary 1050 (11th ed., 2007).

The IRS claims the Treasury Secretary has broad discretion to delegate the authority to reject an offer-in-compromise.  In the non-CDP setting, that may be true.

Generally, Congress wanted the IRS to prescribe guidelines to adjudicate offers-in-compromise. *See* 26 U.S.C. § 7122(d)(1). And the IRS asserts that the Secretary has delegated that authority to the Commissioner of the IRS, who has further delegated it to the Collection Division and to the Centralized Offer-in-Compromise Unit in particular. Under traditional IRS proceedings, this may be appropriate.

But the IRS ignores the regime change that comes with CDP proceedings. Once a CDP hearing is demanded, Congress took some things out of the hands of the IRS. No longer can it prescribe whatever rules it wants or delegate decisionmaking to whomever it wishes. The IRS must follow the rules of §§ 6320 and 6330. *See RadLAX Gateway Hotel v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (observing the well-known canon of interpretation that the "specific governs the general," especially when "a general permission or prohibition is contradicted by a specific prohibition or permission"). And for CDP hearings, Congress specified that an "appeals officer" from the Independent Office of Appeals must make the "determination" for "issues raised" by the taxpayer, including "an offer-in-compromise." *See* 26 U.S.C. § 6330(c). So regardless of the IRS's general procedures, Congress established separate, specific rules for CDP hearings.

Even though this case involves a CDP proceeding, the IRS acts like nothing has changed. The IRS asserts shockingly broad power for itself, claiming that the IRS "Commissioner is ultimately free to act on the offer through whatever process he chooses." Wrong. The Commissioner cannot do whatever he pleases when it comes to CDP hearings. Instead, Congress superseded the Secretary's delegation of authority and itself delegated the determination

to the "appeals officer" for CDP hearings.  So the Commissioner cannot delegate some decisions within the province of a CDP hearing to the Collection Division.  As the Tax Court recently noted, the Tax "Code tells us that any [offer-in-compromise] raised in a CDP hearing is to be considered independently (not just reviewed) by" the appeals officer. *Mason v. Comm'r of Internal Revenue*, 12 T.C.M. (CCH) 1485, 2021 WL 2018666, at *10 (T.C. 2021).

By placing CDP hearings within the Independent Office of Appeals, Congress made a deliberate choice.  It chose for taxpayers to face judgment before an official with congressionally mandated independence.  It is no accident that Congress housed the hearings within the office required by law to resolve tax disputes with "fair[ness] and impartial[ity]."  *Id.* § 7803(e)(3).  And the IRS may not reroute decisionmaking in CDP proceedings around the Independent Office of Appeals.  Otherwise, it makes the benefits of a CDP hearing completely illusory.  If the IRS could delegate determination of an offer-in-compromise to any IRS official, then CDP hearings would become nearly indistinguishable from traditional IRS proceedings.

And contrary to the concurring opinion, there's no conflict with enforcing both the rules of CDP hearings under §§ 6320, 6330 and the time limit of § 7122(f).  After all, our duty is to interpret the law "as a symmetrical and coherent regulatory scheme" and "fit, if possible, all parts into an harmonious whole."  *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (simplified).  Congress enacted both the CDP hearings and the offer-in-compromise time limit to aid taxpayers.  And neither provision requires the taxpayer to choose between the two.  Indeed, nothing in text of either provision prevents a taxpayer from "rais[ing]" the "issue" of an offer-in-compromise "submitted under"

§ 7122 in a CDP hearing. *See* 26 U.S.C. §§ 6330(c)(2)(A), 7122(f). So the taxpayer gets both the benefit of the 24-month timeframe to decide offers-in-compromise and the independence of an appeals officer in a CDP hearing.[3] And this is true no matter how difficult it may be for appeals officers to work within the congressionally established time limits, as the lead and concurring opinions focus on.

In sum, the CDP requirements mean *only* an Independent Office of Appeals' officer can stop the § 7122(f) clock. Unlike in traditional proceedings, the Collection Division may not make any "determination" resolving a CDP-based offer. *See id.* § 6330(c). That Division can't decide an issue in a CDP hearing any more than an IRS human resources specialist or a stranger on the street can. Not that the Independent Office of Appeals can't seek a *recommendation* from others within the IRS. The Collection Division might offer its views to the appeals officer. But that recommendation, by an official with no power over CDP proceedings, cannot be construed as a "reject[ion] by the Secretary" for purposes of § 7122(f). Much like a district court judge adopting a report and recommendation of a magistrate judge, only the appeals officer can give binding effect to the recommendation of the Collection Division.

**2.**

IRS guidance confirms this plain-meaning approach to § 7122(f)'s framework. Not long ago, the IRS expressly agreed with Brown's view—that only the Independent Office of Appeals may decide an offer-in-compromise

---

[3] Besides, it's enough that the IRS conceded that Brown's offer-in-compromise was "submitted under" § 7122 and that § 7122(f)'s time limit applies here. I would hold the IRS to its concession.

submitted during a CDP hearing for § 7122(f) purposes.  It wasn't until *after this dispute* that the IRS started changing its views.  And while the IRS's "guidance documents do not control our analysis and cannot displace our independent obligation to interpret the law," that it "has repeatedly issued guidance to the public at odds with the interpretation it now asks us to adopt" is reason to doubt that its "current position represents the best view of the law." *Bittner v. United States*, 598 U.S. 85, 97 (2023).  So once again, we should take the "IRS's litigation position with a grain of salt." *Seaview Trading*, 62 F.4th at 1142 (Bumatay, J., dissenting).

Starting in 2013, until after Brown submitted his offer-in-compromise, IRS guidance stated, "[w]hen an [offer-in-compromise] is submitted in CDP, Appeals has 24 months to make a determination.  If the offer is not rejected, returned or withdrawn within 24 months of submission, it is deemed accepted."  IRM 8.22.7.10.1.3 (Sept. 23, 2014); *see also Memorandum for Appeals Employees*, IRS Control No. AP-08-0713-03 (July 18, 2013).  This provision remained in the IRS Manual through 2020.  So it was effective when Brown submitted his offer-in-compromise in April 2018 up through the end of the 24-month deadline.  Thus, under the IRS's prior guidance, Brown is correct that the Collection Division's "return" of his offer-in-compromise doesn't count as a rejection under § 7122(f) and his offer should have been deemed accepted.

Even parts of the updated 2020 IRS Manual reflect this prior understanding.  It says, for all "offers submitted during a CDP hearing," the Collection Division's Centralized Offer-in-Compromise Unit must make a "processability determination" and then inform the Office of Appeals.  IRM 5.8.4.15(1)–(2) (Sept. 24, 2020).  In all cases, "a CDP [offer-in-compromise] must be returned to Appeals with no less

than 270 days (9 months) remaining on the 24-month time frame in order for Appeals to make its final determination." *Id.* at (4). Meanwhile, the IRS Manual tells appeals officers that "[t]o be certain the . . . 7122(f) [time period] is closed prior to the end of the 24-month period[,] . . . be sure to communicate to the taxpayer the final disposition of the [offer] in your Determination or Decision Letter." IRM 8.22.7.10.5(4) (Aug. 26, 2020). Finally, even now, the Manual seems to hedge its bets—stating, "[w]hen an [offer-in-compromise] is submitted in CDP, *Appeals generally* has 24 months to make a determination. If the offer is not rejected, returned or withdrawn within 24 months of submission, it is deemed accepted." IRM 8.22.7.10.1.3(1) (Aug. 26, 2020) (emphasis added).

Only in 2020 did the IRS change its tune. The IRS Manual today carves out "return[s]" from Appeals' province. It now states that a "[r]eturn" by the Collection Division "will result in the closing of [§ 7122(f)'s] 24-month period." *Id.* at (5). The IRS even claims that an "[e]rroneously issued rejection letter" by the Collection Division would stop the clock. *Id.*

So, in 2013, the appeals officer had to make the decision on a CDP offer-in-compromise—whether it be a return, rejection, or acceptance. In 2020, after it had mangled Brown's case, the IRS decided that's no longer the case and that the CDP can return the offer. But the IRS's refresh can't hide the plain terms of § 6330 or its inconsistent prior guidance.

That the IRS shifted its positions during the pendency of this very case isn't a reason to defer to it. If anything, that the IRS so easily "speaks out of both sides of its mouth," *Bittner*, 598 U.S. at 97 n.5, means that we should question

its views and "use every tool at [our] disposal to determine the best reading of the statute," *Loper Bright Enters.*, 144 S. Ct. at 2266. So we shouldn't surrender our "interpretive toolkit," *see id.* at 2271, and simply defer to the IRS's view of its delegation authority. Whether Brown deserves a compromise is irrelevant. The lead opinion's judicial rewrite of the Tax Code is a debt that won't just be paid by Brown—it will be borne by every taxpayer who has now lost a vital statutory protection. All the worse for the separation of powers and the rule of law.

**3.**

Finally, the lead opinion commits a cardinal sin of appellate practice in our circuit—it relies on an unpublished memorandum disposition as a precedential statement of law. Over and over, seemingly at every judicial conference or bench-and-bar meeting, judges of the Ninth Circuit warn litigants and district courts against relying on our unpublished memorandum dispositions. For good reason. Generally, "[u]npublished dispositions . . . are not precedent," 9th Cir. R. 36-3(a), and, "[u]nlike an opinion for publication which is designed to clarify the law of the circuit, a memorandum disposition is designed only to provide the parties and the district court with a concise explanation of this Court's decision." 9th Cir. General Order 4.3.a. The very point of unpublished dispositions is to "keep[] the books from being cluttered with dicta that could result in confusion for lawyers and tribunals addressing similar issues." *In re Burns*, 974 F.2d 1064, 1068 (9th Cir. 1992).

Even so, the lead opinion presses on and claims that we have already decided the issue in this case by memorandum disposition. *See* Op. 26–27 ("[We] previously held that when a taxpayer submits an offer-in-compromise in the

context of a collection due process hearing, the Collection Division's return, not the Office of Appeals' notice of determination, terminates the 24-month period in § 7122(f).") (citing *Brown v. Comm'r of Internal Revenue*, 826 F. App'x 673, 674 (9th Cir. 2020) (unpublished)).

Even if it were proper to look to our unpublished dispositions, the lead opinion still gets it wrong. The panel never reached whether the appeals officer must return or reject the offer within 24 months because it was uncontested that the appeals officer in that case did so. I should know; I was on the panel of that decision. The lead opinion then does exactly what we've always forbidden—taking nondispositive language "out of context" from an unpublished decision and inferring the wrong law from it. *In re Burns*, 974 F.2d at 1068.

## II.

Because the panel here has split three ways, none of our pronouncements today carry the weight of precedent. Hopefully, a future panel will sort this out. But based on the plain text of the Tax Code, I would reverse the Tax Court and hold that the appeals officer here needed to return Brown's offer-in-compromise within 24 months. When the appeals officer blew through that deadline, Brown's offer should have been deemed accepted. Because the lead opinion and concurring opinion deny Brown his accepted offer, I respectfully dissent.